**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

JOHN HARRY STEELE, AIS 284155,          :

     Petitioner,                              :

vs.                                      :          CA 16-0006-KD-C

WILLIE THOMAS,                           :

     Respondent.                              :

## REPORT AND RECOMMENDATION

John Harry Steele, a state prisoner presently in the custody of the respondent, has petitioned this Court for federal habeas corpus relief pursuant to 28 U.S.C. § 2254. Petitioner is challenging the validity of his May 16, 2012 murder conviction in the Circuit Court of Choctaw County, Alabama; he was sentenced to a forty-year term of imprisonment on June 6, 2012. The Alabama Court of Criminal Appeals affirmed Steele's conviction and sentence by unpublished memorandum opinion issued on February 1, 2013. *See Steele v. State,* 159 So.3d 794 (Ala.Crim.App. 2013) (table). Because Steele did not seek rehearing or petition the Alabama Supreme Court for writ of certiorari, the Alabama Court of Criminal Appeals issued a certificate of final judgment of affirmance on February 20, 2013. (*Compare* Doc. 7, Exhibit A, at 2 *with* Doc. 10, Exhibit A.) Steele filed a Rule 32 petition in the Circuit Court of Choctaw County, Alabama collaterally attacking his conviction and sentence on January 31, 2014. (Doc. 7, Exhibit H, PETITION FOR RELIEF FROM JUDGMENT PURSUANT TO RULE 32 OF THE ALABAMA RULES OF CRIMINAL PROCEDURE, at 1.) The trial court denied Steele's collateral petition

following a December 10, 2014 evidentiary hearing. (*Compare* Doc. 7, Exhibit H, March 5, 2015 ORDER *with id.,* Evidentiary Hearing Transcript.) The Alabama Court of Criminal Appeals affirmed the trial court's judgment by unpublished memorandum decision issued on September 25, 2015. (Doc. 7, Exhibit L.) Petitioner's application for rehearing was overruled on October 16, 2015. (Doc. 7, Exhibit G, at 2.)  Steele's petition for writ of certiorari to the Alabama Supreme Court was denied on December 4, 2015, and the certificate of final judgment issued that same date. (*Id.*)

In his petition before this Court, filed December 22, 2015 (Doc. 1, at 13), Steele raises the following issues which he claims entitle him to federal habeas corpus relief: (1) the record contains insufficient evidence to sustain his murder conviction; and (2) his trial counsel provided ineffective assistance. Respondent contends, for various reasons,  that this Court is procedurally barred from reaching the merits of all of petitioner's claims. (Doc. 7, at 8-14).

This cause is before the Court on the petition (Doc. 1), respondent's answer with attachments (*see* Doc. 7), and petitioner's response (Doc. 10) to the undersigned's April 5, 2016 show cause order (Doc. 9). A careful review of the record has been completed and it is determined that it contains sufficient facts upon which the issues under consideration may be properly resolved. Therefore, no evidentiary hearing is required. *Compare Means v. Secretary, Department of Corrections,* 433 Fed.Appx. 852, 855 (11th Cir. July 12, 2011) ("[W]here 'the record refutes [a petitioner's] factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.'") (citation omitted)), *cert. denied,* ____ U.S. ____, 132 S.Ct. 1580, 182 L.Ed.2d 198 (2012) *with Allen v. Secretary, Florida Dep't of Corrections,* 611 F.3d 740, 745 (11th Cir. 2010) ("A district court is

not required to hold an evidentiary hearing if the claims 'are merely conclusory allegations unsupported by specifics,' . . . or 'if the record refutes the applicant's factual allegations or otherwise precludes habeas relief[.]'"), *cert. denied,* ___ U.S. ___, 131 S.Ct. 2898, 179 L.Ed.2d 1192 (2011).

## FACTUAL BACKGROUND

On March 18, 2011, the Choctaw County 911 service received a call from Mary Leddon reporting the stabbing of a man she identified only as "B.J." by her common-law husband, John, and requesting assistance. (Doc. 7, Exhibit B, T.T. 40-41 & 69-70; *see also id.* at 41 (911 call was published to the jury by being played).) Sergeant Charles Breland of the Choctaw County Sheriff's Office arrived first on the scene (T.T. 105-106 & 112); he observed a white male lying face-up on the ground, a man sitting cross-legged by the man lying on the ground, a woman sitting on the porch, a woman "behind the man that was laying on the ground[,]" and a large knife stuck in the ground near the body of the man lying on the ground (T.T. 107-108). Sergeant Breland identified the man sitting cross-legged as the defendant, John Steele, and State's Exhibit 15 as the knife he saw stuck in the ground. (*Id.* at 108-109.) As Breland was walking up to the scene, Steele made comments to the effect that he "hate[d] it[]" and he "wish[ed] it hadn't happened." (*Id.* at 109.) Breland then asked Steele if he "d[id] this[]" and Steele immediately responded in the affirmative. (*Id.*) Breland instructed Steele to stand up and put his hands on his head; Steele complied and he was placed under arrest. (*Id.* at 109-110 & 113.)

When the Sheriff of Choctaw County, Tom Abate, arrived on the scene he began taking photographs and, as well, removed the knife from the crime scene. (T.T. 114-117.) Sheriff Abate gave the knife to his Chief Deputy (*compare* T.T. 117 *with* T.T. 120-121), who

3

took it to the county coroner, Rocky Bumpers, so that "it could be transported with the body to the crime lab in Mobile." (T.T. 121). The parties stipulated that "Rocky Bumpers was in the chain of custody on this weapon, and that it is in the same or substantially the same condition as it was when he received it." (*Id.* at 121-122.)  Dr. Eugene Hart, a forensic pathologist/medical examiner with the Alabama Department of Forensic Sciences, performed an autopsy on the victim, William M. Aston, III, on March 21, 2011. (T.T. 79-81.) Dr. Hart determined that the manner of death was homicide and that the cause of death was a stab wound of the chest (*id.* at 81-82), more specifically, a stab wound that hit the heart and left lung (*id.* at 84-85; *see also id.* at 85 ("[T]ypically, with an injury to the heart as seen in this photograph, the victim would collapse within ten to fifteen seconds after the oxygen stored in the brain has been used[] and he . . . would die within minutes afterwards.")). According to Hart, he examined the knife that accompanied the body and determined that it was the weapon that caused Aston's death. (*Id.* at 85-86 & 89-90.) Hart also testified that the knife broke through Aston's anterior left sixth rib, indicating that the knife was used with considerable force. (*Id.* at 87-88.) Hart's autopsy report was admitted into evidence (T.T. 91) and because the forensic pathologist had ordered toxicological studies on blood, urine, and vitreous samples taken from the victim (T.T. 95) and discussed the toxicology report in his autopsy report (T.T. 96-98), the court allowed the defense to examine Hart regarding the substances found in each of the three specimens take from the victim's body (T.T. 99-101). In the blood, ethanol (that is, drinking alcohol) was found at 0.189 grams per 100 milliliter, as was Cyclobenzaprine (that is, Flexeril, a muscle relaxant), and metabolites of cocaine and marijuana (T.T. 99-101); in the urine, 0.254 per 100 milliliters of ethanol was found (*see* T.T. 101); and found

4

in the vitreous fluid was 0.212 grams per 100 milliliters of ethanol (*id.*). On re-direct examination, Hart testified that the ethanol was a sedative drug, as was the Cyclobenzaprine (T.T. 102); that he did know how to classify the marijuana (T.T. 103); and that the Benzoylecgonine (an inactive cocaine metabolite) "should have no effect." (T.T. 102; *see also id.* at 100.) On re-cross examination, the witness "couldn't say[]" whether the drinking of alcohol at the level indicated by the specimens could have an effect other than a calming effect. (T.T. 103; *see also id.* ("I mean, when I drink alcohol, I tend to become calm.").) The trial court sustained objection to the following question and would not allow Hart to answer it: "So, you can't sit here and say, on a specific individual, whether this variety of substance of marijuana, cocaine, and alcohol would have a calming effect or not have a calming effect?" (T.T. 103-104.)

Because the foregoing evidence indisputably establishes that Steele killed Aston by stabbing him with a knife, the defendant and his attorneys early on determined to argue that the killing was justified under the theory of self-defense (*see, e.g.,* T.T. 8 ("One of the issues is going to be self-defense in this case.")), a defense which Steele to this day believes absolves him of Aston's murder (*compare, e.g.,* Doc. 10, at 4 ("[]Steele[] claims he Acted in Self-Defense[.]") *with* Doc. 7, Exhibit B, June 6, 2012 Sentencing Transcript, at 168 ("[M]e and my wife tried to do everything we could to avoid this. But, it just happened. I understand their pain. I do. But, we tried to do everything we could to try to follow the law from the first moment up until now. And nothing I say will take their pain away from them. But, I mean, I'm sorry that it had to happen. I wish it never did. I wish something else would have happened, or I would have just walked in my room, just something. I just don't know what.")). And, in order to place this defense before the jury,

5

the defense did not in any manner object to the State subpoenaing Steele's common-law wife, Mary Leddon, the only other eyewitness to the events leading to the stabbing death of Aston.[1] (*See* T.T. 42.)

Leddon testified that Aston spent the night at the house she shared with Steele and their two sons on March 17, 2011, and that the victim and her husband spent the day together on March 18, 2011. (*See id.* at 46-47.) Leddon worked on March 18, 2011, arriving back home around 3:00 p.m. (*Id.* at 44-45.) When Leddon arrived home, her husband and Aston were watching television in the living room; however, they soon left to pick up Aston's "check from Ezell's." (*Id.* at 47.) The two men arrived back at the house around 7:00 p.m. (*id.* at 48); Leddon noted they had been drinking because she could tell when her husband drank, the men arrived at the house with an open case of beer, and Aston continued to drink (*id.* at 62). After the men got back to the house, Steele took a nap, Leddon walked to her mom's nearby home, and Aston started grilling some meat. (*See id.* at 48-49.) Leddon arrived back from her mom's house at 8:15 p.m. and, sometime thereafter, Steele was awaken, went outside and asked Aston why he woke him up. (*Id.* at 49.) Aston denied waking Steele up and the two men argued about that issue. (*Id.* at 49 &

---

[1]    Steele has never suggested that he should have been called as a witness in his defense. (*Compare* Docs. 1 & 10 *with* Doc. 7, Exhibit B, T.T. 129-130 (outside the presence of the jury, Steele was sworn and confirmed to the trial judge that he participated in discussions with his attorneys about whether he should testify and about not calling Kelly Wood, the person who completed the toxicology report, and that it was his decision to not testify and to not call Wood as a witness for the defense).) Accordingly, in order to have the jury "hear" his claim of self-defense he necessarily needed his common-law wife to testify because she was the only other eyewitness to the stabbing. In other words, in order to be entitled to a self-defense charge the defendant had to offer some evidence supportive of this theory and since he chose not to testify the only manner in which he could offer successfully inject his self-defense theory was through the testimony of his common-law wife.

54.) Leddon told both men that she thought her youngest son, Benjamin, was responsible for waking Steele (*id.* at 50-51), and, according to the witness, her husband was ready to "drop" it and "finish having a good night" but that Aston "would not drop it." (*Id.* at 51.)[2] At some point, Steele went back inside the house and when Leddon entered a minute later,[3] with Aston behind her, her husband was walking down the hallway from the bedroom carrying a Bowie knife. (*Id.* at 54.) The two men started arguing again and though Leddon was situated between the two,[4] she was ultimately pushed aside by Steele and fell against the couch (*id.* at 56-57); as she caught herself and looked back up, Aston was "right up against" her husband[5] and then the victim "turned towards [her] and told [her] John did it, and walked out the door." (*Id.* at 57 & 58.)[6] Leddon saw blood on the

---

[2]    Leddon admitted that nowhere in her written statement on the night of the incident did she recount that her husband wanted to "drop it[.]" (*Id.* at 52; *compare id. with* State's Exhibit 2 (Leddon's handwritten statement).)

[3]    According to Leddon, before she entered the house with Aston behind her, Aston walked around her car and started beating on his chest. (*Id.* at 63.) The witness admitted that this information was not contained in her written statement completed at the request of Sheriff Abate on the night of March 18, 2011. (*See id.* at 72.)

[4]    Leddon's trial testimony was that both she and her husband asked Aston to go back outside (*id.* at 55 & 66; *see id.* at 67 (Leddon's testimony that when she asked Aston to leave he told her "he was not leaving[,] that he wanted some of the meat that was on the grill[]" and that, at some point, the victim saw the knife and told Steele he was not scared of the knife)); she admitted, however, that this information was not contained in her written statement (*id.* at 56; *see also id.* at 55 ("I know I left some stuff out of the statement."); *see id.* at 77 (Leddon's testimony that she was in shock and traumatized by the events of that night and, therefore, when she provided her written statement at 11:00 p.m., she did not remember everything at that time)).

[5]    According to Leddon, Steele was in the same spot he was standing when she first came in the home, whereas Aston traversed the entire living room in advancing towards her husband. (*Id.* at 68.)

[6]    Leddon never saw Aston with a weapon anytime that night. (*Id.* at 75.)

floor, retrieved a towel from the bathroom, called 911, and, after requesting assistance, she went outside and utilized the towel to apply pressure to the wound. (*Id.* at 58-59.) At first, Steele stood "in shock[]" but eventually followed Leddon outside, stuck the knife in the ground, and, before any 911 responders arrived on the scene, performed CPR on Aston. (*Id.* at 69.)

Defense counsel twice moved for judgment of acquittal, arguing that the State had not proven all elements of the offense of murder (T.T. 126 & 131); each motion was denied (*see id.*). The trial court charged the jury on the elements of murder and the lesser-included offense of manslaughter (T.T. 139-142), as well as self-defense (142-145 & 151).

Now, the defendant contends that he acted in self-defense. A person may use physical force upon another person in order to defend himself from what he reasonably believes to be the use or imminent use of unlawful physical force by that other person; and he may use the degree of force [that] he reasonably believes to be necessary for the purpose.

A person may use deadly physical force in order to defend himself if he reasonably believes that the other person is either using or about to use unlawful deadly physical force, or is committing, or about to commit[,] an assault in the first or second degree.

For the defendant's use of deadly physical force against another person to be justified, the deadly physical force must have been used under the following circumstances: The defendant, John Steele, must have reasonably believed that William Maxwell Aston, III, was using or about to use unlawful deadly physical force against him; or the defendant, John Steele, must have reasonably believed that William Maxwell Aston, III, was committing or about to commit an assault in the first or second degree.

Deadly physical force is force which, under the circumstances in which it is used, [] is readily capable of causing death or serious physical injury. A reasonable belief is a belief formed in reliance upon reasonable appearances. It is a belief not performed recklessly or negatively. The test of reasonableness is not whether the defendant was correct in his belief, but whether the belief was reasonable under the circumstances existing at the time.

8

The defendant is not justified in using deadly physical force upon another person and cannot prevail on the issue of self-defense if it reasonably appears, or the defendant knows that he can avoid the necessity of using such force with complete safety by retreating; except that the defendant is not required to retreat if he is in his dwelling or at his place of work, and was not the original aggressor.

The defendant does not have the burden of proving that he acted in self-defense[.] [T]o the contrary[,] [o]nce self-defense becomes an issue, the State has the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense. I charge you members of the jury that if you believe from the evidence that at the time of the killing, the deceased was under the influence of alcohol, you may consider such fact in determining whether or not the defendant acted in self-defense.

I charge you members of the jury that if you believe from the evidence that the deceased, at the time of his death, was under the influence of alcohol[,] and that, as a result of being under such influence, the deceased was aggressive, or belligerent, or quarrelsome, then you should consider such facts in determining whether or not the defendant acted in self-defense in killing the deceased, as I explain the law governing self-defense to you.

.    .    .

I want to give you this additional charge on self-defense, and I ask that you listen carefully.

A person who is justified in using physical force, including deadly physical force, and who is not engaged in an unlawful activity and is in any place where he . . . has the right to be, has no duty to retreat and has the right to stand his . . . ground.

(*Id.*)

On May 16, 2012, a jury of Steele's peers found him guilty of the murder of William Maxwell Aston, III. (*Id.* at 153; *see also id.* at 154 (polling of the jury).). On June 6, 2012, Steel was sentenced to a 40-year tem of imprisonment. (*Id.* at 169.) Steele entered oral notice of appeal. (*Id.* at 170.) On appeal, Steele raised four issues, including a contention that the jury's verdict was due to be reversed as not being supported by the

evidence. (*See* Doc. 7, Exhibit C, at 3.) In affirming Steele's conviction and sentence by unpublished memorandum opinion, the Alabama Court of Criminal Appeals addressed his attack on the jury's verdict, in relevant manner, as follows:

IV.

Steele argues that the evidence did not support the jury's verdict because he clearly acted in self-defense. The jury in this case was fully instructed as to self-defense. Moreover, this specific issue was not included in his motions for judgment of acquittal.

In the present case, the jury was presented with evidence that could reasonably have been determined to support a charge of murder. The jury, as finders of fact, properly weighed the evidence after making credibility choices and found that Steele murdered B.J.

Where, as here, the killing was admitted, the question of whether or not it was justified under the theory of self-defense was for the jury. The issue of self-defense invariably presents a question for the jury, whose verdict will not be disturbed on appeal. Even if the evidence of self-defense is undisputed, the credibility of the defendant with respect to the evidence of self-defense is for the jury, and they may, in their discretion, accept it as true or reject it.

.     .     .

Here, the jury chose not to believe the testimony that indicated that Steele had acted in self-defense in causing the death of B.J. There was sufficient evidence that the two men argued, Steele went into the house and retrieved the Bowie knife from the closet[] and stabbed B.J. in the chest, intentionally causing his death.

Therefore, the trial court's judgment is due to be affirmed.

(Doc. 7, Exhibit F, at 6-7 & 8 (internal quotations marks and citations omitted; brackets omitted).)  Because Steele did not seek rehearing or petition the Alabama Supreme Court for writ of certiorari, the Alabama Court of Criminal Appeals issued a certificate of final judgment of affirmance on February 20, 2013. (*Compare* Doc. 7, Exhibit A, at 2 *with* Doc.

10

10, Exhibit A.)

Steele filed a counseled Rule 32 petition in the Circuit Court of Choctaw County, Alabama collaterally attacking his conviction and sentence on January 31, 2014 (Doc. 7, Exhibit H, PETITION FOR RELIEF FROM JUDGMENT PURSUANT TO RULE 32 OF THE ALABAMA RULES OF CRIMINAL PROCEDURE, at 1), and on February 11, 2014, filed an amended brief in support of his petition (Doc. 7, Exhibit H, AMENDED BRIEF IN SUPPORT OF PETITIONER'S REQUEST FOR RELIEF FROM CONVICTION OR SENTENCE PURSUANT TO RULE 32, ALA.R.CRIM.P.). In his Rule 32 petition, Steele raised the following five claims of alleged ineffective assistance of trial counsel: (1) counsel's failure to make a privilege objection to the testimony of the wife of a criminal defendant who was the only witness to an alleged murder constitutes ineffective assistance so prejudicial that a new trial is warranted; (2) counsel's failure to advise the wife of a criminal defendant who was the only witness to an alleged murder that she could not be compelled to testify against her husband constitutes ineffective assistance so prejudicial that a new trial is warranted; (3) counsel erred in failing to adequately present expert testimony or seek the assistance of a toxicology expert; (4) counsel erred in failing to submit jury instructions on voluntary intoxication where there was evidence of the petitioner's intoxication and erred further in failing to adequately challenge the court's jury charge when the court failed to instruct the jury on voluntary intoxication; and (5) counsel erred in the penalty phase when he failed to present any mitigating evidence or call any witnesses on the defendant's behalf. (*Compare id. with* Rule 32 Petition.)

An evidentiary hearing was conducted on December 10, 2014. (Doc. 7, Exhibit H, Rule 32 Hearing Transcript, at 1.) Kelly Wood, a forensic scientist working in the toxicology section in the Birmingham regional laboratory of the Alabama Department of Forensic Sciences, testified that, on July 29, 2011, she prepared a toxicological analysis report on William Maxwell Aston, III. (*Id.* at 3-4.) Wood testified that she had telephone contact with one of the attorneys for Steele, Blane Dolbare, beginning on May 14, 2012; in that initial conversation, she and Dolbare discussed the possibility of Wood appearing at trial to give testimony and, during another telephone call on May 15, 2016, she discussed with defense counsel the contents of her report. (*Id.* at 8-10; *see id.* at 11 (during Wood's final telephone conversation with Dolbare on May 15, 2012, at 6:00 p.m., the defendant's attorney told her that the defense had decided not to use her).) Had Wood been called as a defense witness, she would have given testimony regarding the results of her analysis, that is, the levels of ethanol and other drugs found in Aston's body. (*Id.* at 13-16.)[7] Wood testified that ethanol is a central nervous system depressant that depresses inhibitions, affects judgment (*id.* at 16) and could possibly cause aggression (*id.* at 17 ("The depression of inhibitions, the flip side of that can be aggressive behavior coming out.")); therefore, if she learned that the victim had become aggressive at the time of his death, that "fact" would "not be inconsistent with [her] findings." (*Id.; see also id.* ("I can't predict behavior. It's very individualistic. It cannot be predicted. That wouldn't be inconsistent with this number.")); *compare id. with id.* at 31 (Wood's testimony that it is

---

[7]     Of course, as reflected above, Wood's results did come into evidence through Dr. Hart's testimony. (*See id.* at 22-23 (Wood agreed that there would be no need for her to testify as to the results of her report if the report had been admitted into evidence).)

also possible that the alcohol, Flexeril and marijuana in Aston's body could have had a mellowing effect).) However, Wood made clear that she could not testify regarding what effect the amount of alcohol in Aston's body would have on that individual's outward behaviors. (*Id.* at 25 ("Specific outward behaviors for an individual, I can't testify to that. No, I wouldn't know what sort of outward behavior there would be."); *see also id.* at 26 ("Impaired judgment would have to do with the mental functions of deciding what to do or risk-taking behaviors or things of that nature. That is a universal sign of intoxication with ethanol. The outward expression of that is very individualistic.").)[8]

It was Mary Leddon's Rule 32 hearing testimony that she testified during her common-law husband's murder trial because she was subpoenaed by the State and thought she had to testify; however, she stated she was never told that she had a right not to testify and that knowing what she knew as of the Rule 32 hearing, she would not have testified at her husband's murder trial. (*See id.* at 38.) Leddon admitted on cross-examination, however, that she and her husband wanted to pursue a defense of self-defense and told his defense attorneys that the killing of Aston was self-defense; therefore, as the only other eyewitness to the events (besides her husband), she chose to testify in order to help Steele with respect to that defense, particularly after one of her husband's attorneys told her it would help her husband to testify. (*See id.* at 40-41 & 45-47.)[9]

---

[8]     Wood stated that this would have been her testimony if called to trial. (*Id.*)

[9]     Collateral counsel for Steele simply made some post-hearing arguments on certain ineffective assistance of counsel claims raised in the Rule 32 petition. For instance, with respect to trial counsel's failure to request jury instructions on voluntary intoxication, Rule 32

(Continued)

By order dated March 5, 2015, the trial court denied Steele's Rule 32 petition.

(Doc. 7, Exhibit H, March 5, 2015 ORDER.)

> First, the Petitioner claims that his counsel was ineffective in that his counsel did not make a privilege objection to the testimony of his wife. This ground is without merit for two reasons. First, in order for this privilege to apply there must have been some sort of communication between the spouses. During the trial of this case, there was no testimony from the witness that concerned any communication between the Petitioner and his wife; therefore, no objection was warranted. The Court is also aware that actions may sometimes be intended as communications and would thus be subject to this privilege. However, in this case there were no actions that could be intended as communications and thus no objection was warranted. Second, for this privilege to apply, any communication must have been confidential and not intended for disclosure. In this case, there was no confidentiality because of the

---

counsel argued that such failure could have impacted the jury's verdict as negating specific intent essential to a murder conviction and requiring conviction of a lesser-included offense, such as manslaughter. (*See id.* at 54-56.) The district attorney countered this argument in the following manner: "Is it self defense or is it manslaughter? You can't have it both ways. It's a self defense case and you intended to kill him, but I'm justified in killing him; or there are mitigating factors to where I didn't have the intent and it's manslaughter. It would be inconsistent for the defense to argue self defense and then argue manslaughter." (*Id.* at 58.)

Following initial arguments by counsel, Steele's Rule 32 counsel then made the following argument which is not contained in the four corners of his Rule 32 petition:

> On the self defense statute, under [the] Alabama Code that's been on the books since 2006, a person not only has a right to a defense for self defense, but a person has a strict immunity from being prosecuted in a case if they are claiming self defense. That's a pre-trial hearing that would have to be brought up for that to happen. What we were saying was, counsel was, once again, ineffective because he never had what is known as a stand your ground hearing, which our law was modeled exactly after Florida law. Under Florida law -- Judge Tommy Nail presided over one in 2009 or 2010. I have two set right now. What I'm saying is, that was not brought up. . . . There was no motion filed for stand your ground immunity. That was not brought up. Once again, another level of ineffective assistance of counsel.

(*Id.* at 63; *compare id. with id.* at 57 ("The self defense law has been on the books since 2006. Self defense, a person is entitled to immunity here. There was no stand your ground petition. No petition to say he could be immune. Claiming self defense. That wasn't presented either.").)

presence of the decedent, Mr. Aston. For these reasons, the Petitioner's trial counsel was not ineffective under the standards set out in *Strickland v. Washington*.

Second, the Petitioner claims that counsel was ineffective in that he did not advise his wife that she could not be compelled to testify against him. This ground is without sufficient merit. The Petitioner's trial counsel had to make a calculated decision of what was in the best interest of the Petitioner. In this case, they decided that instead of subjecting the Petitioner to cross examination, that it would be in his best interest that his wife testify to the events necessary to establish self-defense. The Petitioner, his wife, and his trial counsel each had the same intention which was to help the Petitioner. Therefore, it was not ineffective for the Petitioner's trial counsel to not advise his wife that she could not be compelled to testify against him. Further, the Petitioner's trial counsel did not have a duty to advise the Petitioner's wife of such privilege. Their duty was to the Petitioner, and him alone, and this duty was to undertake such actions as they believed were in his best interest under the circumstances.

Third, the Petitioner claims that counsel was ineffective in that they did not adequately present expert testimony or seek the assistance of a toxicology expert. This ground is also without sufficient merit. During the *Rule* 32 hearing in this cause, the toxicologist, Kelly Wood, testified that she had been contacted by Petitioner's trial counsel and that she had discussed the results of the toxicology report with Petitioner's trial counsel. Ms. Wood also testified that if called to testify by either the prosecution or the defense, it would have been her testimony that she could not say with any certainty whether the decedent would have been more aggressive or more sedate based solely on the drugs that were in his system. It was not, therefore, ineffective for Petitioner's trial counsel to not present expert testimony because the substance of such testimony would not tend to make the fact that the decedent had been more aggressive more likely.

Next, the Petitioner alleges that counsel was ineffective by not challenging the jury instructions to include instructions on intoxication and manslaughter. This ground is also without sufficient merit. Based upon the facts of this case which were presented at trial, and the facts and arguments of counsel at the *Rule* 32 hearing in this cause, it appears to the Court that trial counsel had to make another calculated legal decision as to whether to present the affirmative defense of self-defense, or to present mitigating factors that may have caused the jury to return a verdict on a lesser included offense. In the instant case, trial counsel decided to proceed with the theory that it was an intentional killing justified by self-

15

defense. The purpose of ineffectiveness is not to grade counsel's performance. Therefore, it cannot be said that presenting this defense to the exclusion of all others was ineffective assistance of counsel.

Finally, in addition to the grounds addressed above, the Petitioner included in his filings allegations that Petitioner's trial counsel did not adequately challenge the State's key witness and that Petitioner's trial counsel was ineffective in that they did not present mitigating evidence or call witnesses on behalf of the Petitioner at the penalty phase. After reviewing the filings and considering the arguments presented at the hearing on this cause, this Court finds that these grounds are mere allegations and the Court is without evidence to prove these allegations. Further, without such evidence, this Court has no choice but to find that the Petitioner has not carried his burden of proof on these issues. Therefore, it is the finding of this Court that these arguments are without merit and the Petitioner is not entitled to relief on any of the abovementioned grounds.

(*Id.* at 86-88 (footnote omitted; emphasis in original).) Steele filed written notice of

appeal (*id.* at 89) and raised the following issues on appeal:

> I.  The Rule 32 Court Wholly Failed to Consider Appellant's Argument That Trial Counsel Inadequately Presented Self-Defense At Trial. Self-Defense Law Changed Years Before Trial And [Petitioner's] Trial Attorney Failed To Present The Actual Law To [The] Court. This Deprived John Steele Of A Legally Adequate Defense. John Steele Was Denied The Actual Law of Self-Defense; Denied The Jury To Receive Proper Instructions On Self-Defense; And Denied The Opportunity Of A Stand Your Ground Pre-Trial Hearing. []
>
> a)  Trial Counsel Was Ineffective For Failing To Know The Current Law On Self-Defense. Knowledge Of The Current Law Would Have Fully Exonerated John Steele. []
>
> b)  The Rule 32 Court Erred In Denying John Steele's Petition Where It Was Argued Trial Counsel Failed To Present A Proper Self-Defense Argument. []
>
> c)  The Rule 32 Court Erred In Not Considering That Had Trial Counsel Known Current Alabama Self-Defense Law, John Steele Would Have Been Afforded A Stand Your Ground Pre-Trial Hearing For An Application Of Immunity For Self-Defense. []

16

II.     The Rule 32 Court Erred In Deciding That Not Calling The Toxicologist Was A Calculated Decision Of The Trial Attorney. For Reasons Stated Above, Trial Counsel And The Trial Court Were Not Aware Of The Changes In Law Of Self-Defense. Reliance On Incorrect Law To Make Decisions Cannot Be Considered Calculated When Different Decisions Under Different Law Would Provide Different Results. []

III.    Rule 32 Court Erred In Deciding Trial Counsel Not Making A Privilege Objection To The Testimony Of Wife Of Defendant Was Calculated. She Was The Only Witness And The Prosecution Could Not Have Moved Forward Without Her Testimony. Further, That Trial Counsel Failed To Know Current Self-Defense Law For A Case Solely Revolved Around That Issue Raises Reasonable Concerns That The Law On Privilege Was Not Known Or Thought About By The Trial Attorney.

(Doc. 7, Exhibit I, at 3-5.)

The Alabama Court of Criminal Appeals affirmed the trial court's judgment by unpublished memorandum decision issued on September 25, 2015. (Doc. 7, Exhibit L.)

On appeal, Steele raises three claims.[10] Steele first argues that "[t]he Rule 32 Court wholly failed to consider [Steele's] argument that trial counsel inadequately presented self-defense at trial." Steele next argues that his trial counsel was ineffective for failing to present the toxicologist as an expert witness. Finally, Steele argues that his trial counsel was ineffective for failing to advise Steele's wife that she could not be compelled to testify against Steele under Rule 504, Ala.R.Evid., and for failing to object to her testimony on that basis.

As explained above, Steele's petition was denied by the circuit court after Steele was afforded the opportunity to prove his claims at an evidentiary hearing. See Rule 32.9(a), Ala.R.Crim.P.

---

[10]     "Steele does not pursue his claims that his trial counsel was ineffective for failing to adequately challenge jury instructions or the State's key witness or for failing to present mitigating evidence or call any witnesses on behalf of Steele in the penalty phase; therefore, those claims are deemed abandoned. See, e.g., Brownlee v. State, 666 So.2d 91, 93 (Ala.Crim.App. 1995) (holding that '[w]e will not review issues not listed and argued in brief')." (Doc. 7, Exhibit L, at 5 n.2.)

When the circuit court conducts an evidentiary hearing "[t]he burden of proof in a Rule 32 proceeding rests solely with the petitioner, not the State." <u>Davis v. State</u>, 9 So.3d 514, 519 (Ala.Crim.App. 2006), rev'd on other grounds, 9 So.3d 537 (Ala. 2007). "[I]n a Rule 32, Ala.R.Crim.P., proceeding, the burden of proof is upon the petitioner seeking post-conviction relief to establish his grounds for relief by a preponderance of the evidence." <u>Wilson v. State</u>, 644 So.2d 1326, 1328 (Ala.Crim.App. 1994). Rule 32.3, Ala.R.Crim.P., specifically provides that "[t]he petitioner shall have the burden of . . . proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief." "[W]hen the facts are undisputed and an appellate court is presented with pure questions of law, that court's review in a Rule 32 proceeding is de novo." <u>Ex parte White</u>, 792 So.2d 1097, 1098 (Ala. 2001). "However, where there are disputed facts in a postconviction proceeding and the circuit court resolves those disputed facts, '[t]he standard of review on appeal . . . is whether the trial judge abused his discretion when he denied the petition.'" <u>Boyd v. State</u>, 913 So.2d 1113, 1122 (Ala.Crim.App. 2003) (quoting <u>Elliott v. State</u>, 601 So.2d 1118, 1119 (Ala.Crim.App. 1992)).

"[A] defendant may bring an ineffective-assistance-of-counsel claim in a timely Rule 32 petition." <u>Harris v. State</u>, 814 So.2d 1003, 1006 (Ala.Crim.App. 2001). In <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984), the United States Supreme Court articulated two criteria that must be satisfied to show ineffective assistance of counsel. A defendant has the burden of showing (1) that his counsel's performance was deficient and (2) that the deficient performance actually prejudiced the defense. "To meet the first prong of the test, the petitioner must show that his counsel's representation fell below an objective standard of reasonableness. The performance inquiry must be whether counsel's assistance was reasonable, considering all the circumstances." <u>Ex parte Lawley</u>, 512 So.2d 1370, 1372 (Ala. 1987).

To prove prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." [<u>Strickland v. Washington, supra</u>,] at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." <u>Id.</u> at 693.

With these principles in mind, we now address Steele's claims on appeal.

I.

Steele argues that "[t]he Rule 32 Court wholly failed to consider [Steele's] argument that trial counsel inadequately presented self-defense at trial." (Steele's brief, p. 8.) Beneath this argument in his brief, Steele lists three subparts: subpart (a) trial counsel was ineffective for failing to present a self-defense claim based on § 13A-3-23(a)(4), Ala.Code 1975; subpart (b) trial counsel was ineffective for failing to request a jury instruction on self-defense in accordance with § 13A-3-23; subpart (c) trial counsel was ineffective for failing to request a pretrial determination of immunity for self-defense. (Steele's brief, pp. 8-24.)

Initially, we note that these claims were not raised below and, thus, they may not be raised for the first time on appeal. "'"[A]n appellant cannot raise an issue on appeal from the denial of a Rule 32 petition which was not raised in the Rule 32 petition."'" Hooks v. State, 21 So.3d 772, 789 (Ala.Crim.App. 2008) (quoting English v. State, 10 So.3d 620, 621 (Ala.Crim.App. 2007), quoting in turn Arrington v. State, 716 So.2d 237, 239 (Ala.Crim.App. 1997)).

In his brief, Steele asserts that "Rule 32 counsel argued at the hearing that the laws on self-defense were misapplied at John Steele's trial because of the 2006 change in the law. R. 57; 63." (Steele's brief, p. 8.)  In support of that argument, Steele points to two portions of the record, the first of which occurred during his argument regarding his amended claim that his trial counsel was ineffective for failing to present mitigating evidence and was transcribed as follows:

"[Defense counsel]: I also cite to the Court, Helms vs. State, 254 Alabama 14, 1950 case and also Ivey vs. State, 237 Alabama 344, which is a 1939 case. Also, as we state in our petition, defense counsel failed to produce mitigating evidence by calling any witnesses at the penalty phase of the case. That's part of our job when we are fighting for our clients, especially when our client has been found guilty. At least at the penalty phase, put on witnesses to mitigate. Put on witnesses to show that this is a good guy and hasn't been in trouble before and he don't need to go to prison for all of these years. There is something else going on here. Once again, he was ineffective and failed to do that.

"In Wales vs. Taylor, 529, US District, the Court found counsel was ineffective for failing to present mitigation evidence. That was a 2000 case. Not to mention other areas of ineffectiveness. The self defense law has been on the books since 2006. Self defense, a person is entitled to

19

immunity here. There was no stand your ground petition.
No petition to say he could be immune. Claiming self
defense. That wasn't presented either.

"The transcript speaks for itself. There are all various
levels of ineffectiveness. Even if the Court feels I'm not
convinced, maybe there is something there, but I don't
know, it's not just on[]e incident. These are all of the
incidents altogether that show this attorney—he is probably
a great attorney. I don't know him. He is probably a great
guy but on this particular day, on this particular man's life,
he messed up. This man is paying the price for it.

"In sum, we are requesting for this Court to overturn
the conviction of John Steele and allow them to have a trial
where all the evidence can be heard and what evidence
shouldn't be heard, won't be heard, so that he can have his
fair day in court and have a trial where we can see justice
being served. Thank you."

(R. 56-58.) Later, in response to the prosecutor's rebuttal argument
regarding Steele's claim that his trial counsel was ineffective for allowing
Steele's wife to give testimony in an effort to establish his self-defense
claim, defense counsel argued:

"[Defense counsel]: Can I just clarify what I was
saying about the self defense?

"The Court: Sure.

"[Defense counsel]: On the self defense statute, under
Alabama Code that's been on the books since 2006, a person
not only has a right to a defense for self defense, but a
person has a strict immunity from being prosecuted in a case
if they are claiming self defense. That's a pre-trial hearing
that would have to be brought up for that to happen. What
we were saying was, counsel was, once again, ineffective
because he never had what is known as a stand your ground
hearing, which our law was modeled exactly after Florida
law. Under Florida law -- Judge Tommy Nail presided over
one in 2009 or 2010. I have two set right now. What I'm
saying is, that was not brought up. . . . That was not--There
was no motion filed for stand your ground immunity. That
was not brought up. Once again, another level of ineffective
assistance of counsel.

20

(R. 63.)

As indicated above, however, Steele failed to raise these claims in his Rule 32 petition, therefore, those claims cannot now be considered on appeal. Hooks, supra.

Moreover, with regard to Steele's argument that his trial counsel failed to request a pretrial determination of immunity, Steele has failed to state a claim of ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Here, Steele failed to show deficient performance. Indeed, it appears that Steele's entire argument is grounded in the allegation that his trial counsel was unaware of the law on self defense but Steele does not offer specific facts to support that allegation. Also, there is no indication that the outcome of Steele's trial would have been different had his trial counsel performed differently. Indeed, Steele did not show that he would have been granted a pretrial determination of immunity or that such a hearing is even required under § 13A-3-23(d), Ala.Code 1975. Accordingly, Steele is not entitled to relief on this claim.

## II.

Steele argues that his trial counsel was ineffective for failing to present the toxicologist as an expert witness. (Steele's brief, p. 25.)

First, we note that Steele's argument in his Rule 32 petition and at his evidentiary hearing was that his trial counsel was ineffective for not calling as a witness the toxicologist, which, Steele argued, prevented him from introducing evidence that the victim was the aggressor. Steele now argues, however, that self defense could have been established if his trial counsel had called the toxicologist to testify, as she did at the Rule 32 hearing, that the victim would have had impaired judgment and inhibitions. (Steele's brief, pp. 26-27.) The State, in its brief, contends that because Steele failed to raise this particular ineffective-assistance-of-counsel claim in his Rule 32 petition, it is barred from appellate review. We agree with the State. See Burgess v. State, 962 So.2d 272, 301 (Ala.Crim.App. 2005).

Second, we question whether Steele's brief complies with the provisions of Rule 28, Ala.R.App.P., as to this issue. Arguments that do not comply with this rule are deemed waived. . . . Furthermore, it is insufficient for an appellant to rely solely on general propositions of law in support of an appellant's claims. . . . Although we recognize that Steele's brief includes quotations and citations to a single statute and case, those quotations from and citations are merely broad propositions of law.

21

Because Steele's brief fails to substantially comply with Rule 28(a)(10), Ala.R.[App.]P., his appellate arguments are deemed waived.

Moreover, Steele has failed to demonstrate that there is any merit to his claim, or to demonstrate that the circuit court improperly denied his petition. As we recognized above, we review the denial of Steele's petition for an abuse of discretion. Strickland, supra. "On appeal, error is not presumed and the party claiming that a trial judge has abused his discretion has the burden of persuasion." Gratton v. State, 456 So.2d 865, 872 (Ala.Crim.App. 1984). Steele has not met his burden.

III.

Steele argues that his trial counsel was ineffective for failing to advise Steele's wife, Leddon, that she could not be compelled to testify against Steele under Rule 504, Ala.R.Evid., and for failing to object to her testimony on that basis. (Steele's brief, p. 28.) Contrary to Steele's assertion, Steele's trial counsel did not have a duty to advise Leddon of the husband-wife privilege. Moreover, Steele's argument is without merit for at least two reasons.

First, as indicated above, the circuit court, in its order denying Steele relief, concluded that Rule 504, Ala.R.Evid.—which provides that "[a] communication is 'confidential' if it is made during the marriage privately by any person to that person's spouse and [[is]] not intended for disclosure to any other person"—did not apply. Here, Leddon testified regarding Steele's actions in the course of his confrontation with the victim. Those actions, even if they were to be considered communications, were not confidential as they were made in the presence of the victim.

Second, the record shows that trial counsel's decision to allow Leddon to testify was trial strategy. At the hearing, Leddon testified that trial counsel had communicated to Leddon that it would be in Steele's best interests if she offered evidence in support of Steele's self-defense claim. "The selection of witnesses and the introduction of evidence are questions of trial strategy and virtually unchallengeable." Washington v. State, 95 So.3d 26, 52 (Ala.Crim.App. 2012).

Because Steele's argument is without merit, his counsel was not ineffective for failing to raise this argument at trial. . . .

Based on the foregoing, the judgment of the circuit court is affirmed.

(*Id.* at 5-12 (footnote in original).)

22

Petitioner's application for rehearing (Doc. 7, Exhibit M)[11] was overruled on October 16, 2015 (Doc. 7, Exhibit G, at 2), and his petition for writ of certiorari to the Alabama Supreme Court (Doc. 7, Exhibit N) was denied on December 4, 2015, with the certificate of final judgment being entered that same date (Doc. 7, Exhibit G, at 2). In the petition for writ of certiorari to the Alabama Supreme Court, Steele maintained that the Alabama Court of Criminal Appeals "failed to consider that the evidence presented in the Rule 32 hearing would have made a difference in John Steele's trial" (Doc. 7, Exhibit N, at 5) and, in support thereof, argued the following:

---

[11]    In the application for rehearing, counsel for Steele cited to the self-defense jury instructions contained in the court's oral charge to the jury and argued, for the first time, that those instructions did not "comply with the 2006 Amended use of force as codified in Code of Alabama 1975 13A-3-23." (Doc. 7, Exhibit M, at 5, citing *Williams v. State,* 46 So.3d 970 (Ala.Crim.App. 2010).) In addition, petitioner made the following arguments:

> 5.    Steele respectfully objects that the choices trial counsel made: the choice of whether to call the toxicologist or whether to compel Mary Leddon, Steele's wife, were strategic choices where there was clear reliance on incorrect law.

> 6.    Additionally, Steele respectfully objects that the failure to call the toxicologist is barred for review where Steele provided additional precise reasons of counsel's deficient performance in not calling the toxicologist to help further the theory of self-defense.

(*Id.* at 6.) In his brief in support of the application for rehearing, Steele makes a general argument that trial counsel failed to present evidence of the theory of self-defense (*see id.* at 9 ("Trial counsel's strategy of not presenting any evidence for the benefit of John Steele's theory of self-defense where ample evidence actually existed was deficient performance.") & 12-13), he does not again attack the self-defense instructions (*see id.* at 8-21); instead, his brief centered on two arguments he "insinuates" into the foregoing general argument, namely, that "[t]he issue[] of not calling the toxicologist to testify was properly preserved for review where the reasons and arguments were additional precise reasons in Appellant's brief[,]" and "[t]he State Compelled and Trial Counsel Failed to Protect the Rights of [] John Steele's Wife by Failing to Inform her of her Right Not To Testify. Trial Counsel Rendered Deficient Performance that Prejudiced Steele where there Existed No Strategic Value in Her Testimony for the Benefit of Steele." (*Id.* at 10, 13 & 18.)

There is a conflict between the decision of the Court of Criminal Appeals in Mr. Steele's case and with prior precedent and Federal and State law.

The central issue is whether evidence that was available at trial, if presented to the jury would have made a probable difference in the outcome of Mr. Steele's case; second, is whether this difference should have taken place at Mr. Steele's trial. Strickland v. Washington, 466 U.S. 668 (1984). If so, then Mr. Steele was denied effective assistance of counsel in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution, Article I, Section 6 of the Alabama Constitution, and Alabama law. Rompilla v. Beard, 545 U.S. 374 (2005); Wiggins v. Smith, 539 U.S. 510 (2003); Williams v. Taylor, 529 U.S. 362 (2000); Strickland, 466 U.S. 668 (1984).

In Mr. Steele's case, expert testimony was absent in the case despite efforts by the expert to make herself available and had information important to the case that was crucial for a successful theory of self-defense. See Wiggins, 539 U.S. at 517 (counsel's failure to retain forensic social worker unreasonable where funds were provided for that purpose). Further, the State did not offer any evidence against Mr. Steele that would negate the expert's testimony or minimize its effect.

The theory of self-defense was the sole theory the defendant presented at trial. The trial attorney was prevented from introducing evidence about the decedent's drug use, including cocaine, because no foundation could be laid to allow its introduction without the expert testimony of Kelly Wood, the toxicology expert. . . . This is despite the trial court telling defense counsel precisely what to do to introduce the evidence the defense attorney attempted to introduce. []

Further, the evidence of Kelly Wood, the toxicologist[,] provided at the Rule 32 hearing evidentiary hearing was exactly what she would have offered had she been called to testify by the defense at trial. . . . At no point was her testimony, or her findings, inconsistent with a theory of self-defense, nor did she present any evidence or testimony that would have been the least bit detrimental to the defendant.

The failure to present evidence that was only beneficial to a defendant violates the first prong of Strickland – deficient performance through specific acts or omissions. Strickland, 466 U.S. at 687. This is especially true where trial counsel attempted to introduce such evidence and was unable to do so, even after an explanation by the trial court and the expert requesting to be called to introduce the evidence.

Further, the failure to introduce evidence the trial attorney attempted to introduce at trial, where the trial court outlined how to get that evidence introduced, and the toxicologist who could introduce that evidence requested to be subpoenaed to be able to introduce that evidence, prejudiced the defendant and shows it was unreasonable not to call the toxicologist.

The jury did not get to hear about the cocaine use of the victim, the specific levels of the different types of ethanol in the victim's system, nor Kelly Wood's conclusions based on the victim's substance abuse. [] The trial attorney asked such questions to the state's expert who could not answer such questions, but Kelly Wood could and would have answered.

The testimony [of] Mary Leddon, the wife of John Steele, should not have been presented at trial. The Criminal Court of Appeals in its memorandum decides the communications are not confidential, as the actions occurred in the presence of the victim, but fails to address Petitioner's argument that the State compelled Mary Leddon to testify. . . . Further, absent her testimony, the State would have insufficient evidence to overcome the defendant's theory of self-defense.

Without her testimony, the jury is provided evidence of a drunk[en] unwelcome man who entered into John Steele's house.[12] With the addition of the toxicologist, this unwelcome guest was highly intoxicated, over twice the legal limit, and had recently abused cocaine and other drugs.

These differences, both individually (the introduction of the toxicologist and the removal of Mary Leddon's testimony) and cumulatively affected the outcome of the trial. This is the type of case where the verdict was more likely to have been affected by counsel's errors than the type of case where the verdict has overwhelming record

---

[12]     This is simply not true inasmuch as the only manner in which the jury heard anything about the victim and the actions of the victim was through the testimony of Mary Leddon. If Leddon had not testified, Steele necessarily would have had to testify about the events of that fateful evening in order to place self-defense in issue, and Rule 32 counsel has never suggested that Steele's testimony was a possibility. Without the testimony of one of the two eyewitnesses referenced above, the State had sufficient evidence of murder through the 911 call, the testimony of the first responder, who testified that Steele told him he stabbed the victim, and the testimony of the medical examiner, who testified that the victim died of a knife wound to the left lung and heart that was delivered with enough force to break a rib (and who also, by the way, testified about the levels of ethanol, etc., in the victim's system).

support.   See Strickland, 466 U.S. at 695-696. These specific acts or omissions would have made a difference at trial such that Mr. Steele would not be convicted and serving a 40-year sentence.

Finally, the introduction of the toxicologist, Kelly Wood[,] would have provided the defense with the ability to request jury instructions on how to utilize the intoxication of the victim. Quinlivan v. State, 555 So.2d 802, 805 (Ala.Crim.App. 1989) (Where case reversed and remanded because the jury should have been instructed on how to utilize the intoxication of the victim as evidence). In this case, no request was made, and the jury never heard the degree of the victim's intoxication, nor what all illegal drugs he had taken earlier that day.[13] Because this was never introduced, proper jury instructions about how to utilize the intoxication of the victim was never given and the jury failed to understand how to use the fact the victim was drunk and trespassing into the home of John Steele adequately.

Had these instructions been given, it is probable that the instructions could have weighed against the State's burden of disproving self-defense. The jury would have been given instructions similar to what the defense in Quinlivan requested and the Court of Criminal Appeals agreed should have been given: "I charge you, members of the jury, that if you believe from the evidence that at the time of the killing the deceased was under the influence of alcohol, you may consider such fact in determining whether or not the defendant acted in self-defense." 555 So.2d 804-805.[14]

The Criminal Court of Appeals has previously found the absence of those instructions where the victim's high degree of intoxication is critical to a theory of self-defense, those instructions should be requested and given. Quinlivan, 555 So.2d 804-805; [s]ee also Ferguson v. State, 105 So. 435 (1925).

_____

[13]      Again, this argument is without foundation inasmuch as defense counsel, through the testimony of the forensic pathologist, offered evidence about the levels of ethanol and other drugs in the victim's body.

[14]      This was the exact charge/instruction given to the jury in this case by the trial court. (Doc. 7, Exhibit B, T.T. at 144 ("I charge you members of the jury that if you believe from the evidence that at the time of the killing[] the deceased was under the influence of alcohol, you may consider such fact in determining whether or not the defendant acted in self-defense.").)

Here, no request, nor any instruction of the victim's intoxication was offered by trial counsel. This creates prejudice where this Court and the Court of Criminal Appeals have previously held this instruction should be given in cases similar to Mr. Steele's and have remanded cases because of the absence of such instructions.

(*Id.* at 5-11 (footnotes omitted and supplied).)

As previously indicated, Steele filed his petition seeking habeas corpus relief in this Court on December 22, 2015 (Doc. 1, at 13), raising the following issues which he claims entitle him to federal habeas corpus relief: (1) the record contains insufficient evidence to sustain his murder conviction;[15] and (2) his trial counsel provided ineffective assistance (*see id.* at 6-10 & 14-20). In his petition, Steele asserts the following "grounds" of alleged ineffective assistance of trial counsel: (1) the expansive and encompassing claim that he was denied effective assistance of counsel in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution (*id.* at 6), under the umbrella of which he places all five claims of ineffective assistance of counsel raised in his

---

[15]     Steele's argument in support of this claim reads, in relevant part, as follows:

There is insufficient evidence contained in the court record [] that the jury [] relied on for their determination that [Steele] had committed the crime of murder. [Steele] pleaded self-defense. So the question becomes was there any evidence showing [Steele] had the specific intent to cause the death of the victim? Self-defense is an intentional action[,] yet is not a plea to an intentional killing. One can kill another in self-defense without the expectation of killing him. The prosecution offered no evidence to dispute the only witness description of the circumstances. Instead prosecution brings doubt to the truth of his witness by showing her bias not wanting her husband convicted. Th[i]s prejudiced [Steele]. Even the law enforcement officer that charged [Steele] offered no conflicting evidence to dispute the circumstances[] described by the witness. The only essential element that was clearly established beyond a reasonable doubt is that [Steele] did cause the death of the victim.

(Doc. 1, at 20.)

Rule 32 petition (*compare id. with id.* at 14-15) as well as the "modifications" made by Rule

32 counsel (or petitioner himself) to those five grounds (*see id.* at 15-17)[16]; (2) the claim

----

[16]         Steele "throws" everything against the proverbial wall by "lifting" from the various appellate briefs and petition for writ of certiorari the following:

           Regarding self-defense. Trial counsel and trial court were unaware of the changes [in the law]. John Steele did not get the benefit of the actual self-defense laws of Alabama, which undermine [] confidence in the outcome, where Mr. Steele's sole defense was self-defense.

           2.         The Rule 32 court erred in not considering trial counsel ineffective for failing to request a stand your ground pretrial hearing that John Steele was entitled to have.

           3.         The Rule 32 court erred in determining a privileged objection was a calculated decision by trial counsel, when there is no evidence to suggest he thought about the possibility, and if it is was calculated, it is forfeit[ed] because the calculation was not based upon Alabama's law on self-defense.

           4.         The Rule 32 court erred in determining the toxicologist could not provide any fact for self-defense more or less than already presented at trial, especially considering the trial court was not using Alabama's law on self-defense.

                              .         .         .

           4.         This Court has stated the [] jury instructions that occurred in [Steele's] 2011 criminal case do not comply with the 2006 amended use of force as codified in Code of Alabama 1975 13A-2-23[.] Trial court's self-defense instruction did not substantially cover the language set forth in the amended version of 13[A]-3-23(b) and that the instruction was an incorrect statement of law.

           5.         [Steele] objects that the choices trial counsel made[,] the choice of whether to call the toxicologist or whether to compel Mary Leddon, [Steele's] wife, were strategic choices[] where there was clear reliance on incorrect law.

           6.         Additionally, [Steele] objects that the failure to call the toxicologist is barred for review where [Steele] provided additional precise reasons of counsel's deficient performance in not calling the toxicologist to help further the theory of self-defense.

(*Id.* at 15, 16 & 17.)

that trial counsel erred in failing to make a privilege objection to the testimony of his common-law wife at trial (Doc. 1, at 7), which he "expands" in his supporting facts by claiming that his trial counsel did not inform his wife of her right not to testify and did not object to the State calling Mrs. Leddon to testify (*id.* at 17; *see also id.* at 18 ("Trial counsel's error was compounded by the fact that it was clearly within counsel's right to object and assert spousal privilege[.]"); (3) the claim that trial counsel's failure to advise the wife of a criminal defendant who was the only witness to an alleged murder that she could not be compelled to testify constitutes ineffective assistance so prejudicial that a new trial is warranted (*see* Doc. 1, at 8);[17] and (4) the claim that trial counsel erred in failing to adequately present expert testimony or seek the assistance of a toxicology expert (Doc. 1, at 8).

Because the respondent argued in his answer that Steele failed to fully exhaust his claims in state court and, as a consequence, this Court is prohibited by the procedural default doctrine from considering the merits of those claims (*see* Doc. 7), the undersigned explained the procedural default defense to Steele by order dated April 5, 2016, and

---

[17]     In support of this claim, Steele asserts the following:

The law in Alabama is very clear that a witness cannot be compelled to testify against her husband. The marital privilege not to testify against one's spouse belongs to the spouse whose testimony is sought. [H]ad trial counsel informed Mrs. Leddon that she did not have to testify against her husband[] she would not have testified.

(*Id.* at 8 & 18; *see also id.* at 18-19 (petitioner's reference to an affidavit supplied by his wife which contain her statements that she was informed by no attorney that she had the right not to share confidential communications between herself and her husband and that had her husband's trial attorney told her she did not have to testify then she would not have testified).

extended to him the opportunity to establish cause and prejudice for any procedural defaults or extraordinary circumstances implicating a fundamental miscarriage of justice (*see* Doc. 9). In response to this order, Steele simply states that he exhausted one complete round of Alabama appellate review with respect to his ineffective assistance of trial counsel claims (Doc. 10, at 2) and though he admits his sufficiency of the evidence claim was not fully exhausted in the state courts of Alabama, he lays blame for this deficiency at the feet of counsel who represented him on direct review of his conviction and additionally argues that this Court's failure to consider the merits of this claim will result in a fundamental miscarriage of justice (*id.* at 2-4).

## CONCLUSIONS OF LAW

### A.    Procedural Default Doctrine.

In *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), the Supreme Court stated that it would "not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Id.* at 729, 111 S.Ct. at 2553-2554. This rule applies whether the state law ground is procedural or substantive.  *Id.* at 729, 111 S.Ct. at 2554. The doctrine applies to bar federal habeas review when a state court declines to address a petitioner's federal claims because the petitioner fails to meet a state procedural requirement. *Id.* at 729-730, 111 S.Ct. at 2554; *see also Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (federal courts must honor legitimate state trial and appellate procedural rules when enforced by state courts and must decline to review on the merits claims that the state treats as barred absent a showing of cause for non-compliance with such rules and resulting prejudice); *Alderman v. Zant*, 22 F.3d 1541,

1549 (11th Cir.) ("Pursuant to the doctrine of procedural default, a state prisoner seeking federal habeas corpus relief, who fails to raise his federal constitution[al] claim in state court, or who attempts to raise it in a manner not permitted by state procedural rules is barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default."), *cert. denied sub nom*. *Alderman v. Thomas*, 513 U.S. 1061, 115 S.Ct. 673, 130 L.Ed.2d 606 (1994). "In these cases, the state judgment rests on independent and adequate state procedural grounds." *Coleman*, 501 U.S. at 730, 111 S.Ct. at 2554 (citations omitted).

The application of the independent and adequate state ground doctrine in the habeas context is grounded in concerns of federalism and comity. *Id.*

> Without the rule, a federal district court would be able to do in habeas what this Court could not do on direct review; habeas would offer state prisoners whose custody was supported by independent and adequate state grounds an end run around the limits of this Court's jurisdiction and a means to undermine the State's interest in enforcing its laws.

*Id.* at 730-731, 111 S.Ct. at 2554.

An additional consideration comes to the fore when the independent and adequate state ground supporting a petitioner's custody is a state procedural default. *Id.* at 731, 111 S.Ct. at 2554. The Supreme Court has long held

> that a state prisoner's federal habeas petition should be dismissed if the prisoner has not exhausted available state remedies as to any of his federal claims. (citations omitted) This exhaustion requirement is also grounded in principles of comity; in a federal system, the States should have the opportunity to address and correct alleged violations of state prisoners' federal rights.

.    .    .

31

> [A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance. A habeas petitioner who has defaulted his federal claims in state court meets the technical requirement for exhaustion; there are no state remedies any longer "available" to him.   (citations omitted) In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases.

*Id.* at 731, 732, 111 S.Ct. at 2554-2555, 2555.

In the habeas context, federal courts are to "presume that there is no independent and adequate state ground for a state court decision when the decision 'fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion.'" *Id.* at 735, 111 S.Ct. at 2557 (quoting *Michigan v. Long*, 463 U.S. 1032, 1040-1041, 103 S.Ct. 3469, 3476-3477, 77 L.Ed.2d 1201 (1983)); *see Harris v. Reed*, 489 U.S. 255, 263, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989) ("[A] procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar."). In all other cases, the presumption is not applicable. *See Coleman*, 501 U.S. at 739, 111 S.Ct. at 2559. In *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), the Supreme Court held that the *Harris v. Reed* presumption is inapplicable to a claim that is never presented to the state courts. *Id*. at 299, 109 S.Ct. at 1069 ("The rule announced in *Harris v. Reed* assumes that a state court has had the opportunity to address a claim that is later raised in a federal habeas proceeding."). Moreover, the presumption "looks through" unexplained orders to the last reasoned decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 804, 111 S.Ct. 2590, 2595, 115 L.Ed.2d 706 (1991).

> Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.  If an earlier opinion "fairly appear[s] to rest primarily upon federal law," *Coleman*,[__ U.S., at __, 111 S.Ct., at 2559], we will presume that no procedural default has been invoked by a subsequent unexplained order that leaves the judgment or its consequences in place.  Similarly where . . . the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits.

501 U.S. at 803, 111 S.Ct. at 2594. Also, the presumption may not be applied in cases in which the state court opinion did not, at a minimum, discuss the federal grounds at issue. *Tower v. Phillips*, 7 F.3d 206, 211 (11th Cir. 1993) ("*Coleman* and *Ylst* lead us to conclude that we may not assume that had the state court issued an opinion, it would have ignored its own procedural rules and reached the merits of this case. In fact, the most reasonable assumption is that had the state court ruled, it would have enforced the procedural bar."). Finally, "where a state court has ruled in the alternative, addressing both the independent state procedural ground and the merits of the federal claim, the federal court should apply the state procedural bar and decline to reach the merits of the claim." *Alderman v. Zant, supra*, 22 F.3d at 1549.

When a petitioner has procedurally defaulted a claim, a federal court is barred from reaching the merits of that claim unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice." *Coleman, supra*, 501 U.S. at 750, 111 S.Ct. at 2565. The cause and prejudice standard applies "uniformly to all independent and adequate state procedural defaults." *Id.* at 750-751, 111 S.Ct. at 2565.

> In procedural default cases, the cause standard requires the petitioner to show that some objective factor external to the defense impeded counsel's efforts to raise the claim in state court. Objective factors

that constitute cause include interference by officials that makes compliance with the state's procedural rule impracticable, and a showing that the factual or legal basis for a claim was not reasonably available to counsel. In addition, constitutionally [i]neffective assistance of counsel is cause. Attorney error short of ineffective assistance of counsel, however, does not constitute cause and will not excuse a procedural default. Once the petitioner has established cause, he must show actual prejudice resulting from the errors of which he complains.

Federal courts retain the authority to issue the writ of habeas corpus in a further, narrow class of cases despite a petitioner's failure to show cause for a procedural default. These are extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime. We have described this class of cases as implicating a fundamental miscarriage of justice.

*McCleskey v. Zant*, 499 U.S. 467, 493-494, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991) (internal quotation marks and citations omitted).

In his answer, respondent asserts that all of petitioner's claims are procedurally defaulted under *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) due to Steele's failure to "fairly present" these claims throughout "one complete round of the State's established appellate review process[,]" *id.* at 845, 119 S.Ct. at 1732. (*See* Doc. 7, at 8-13).

Turning first to Steele's sufficiency of the evidence claim, petitioner frankly admits that this claim has been defaulted. (Doc. 10, at 3.) Even if this Court was to agree with Steele that he has established cause for his procedural default of this claim, namely his appellate counsel's failure to seek rehearing and to petition the Alabama Supreme Court for certiorari review or otherwise to advise him of the decision of the Alabama Court of Criminal Appeals so that he could have sought a rehearing and certiorari review (*see id.*), he cannot establish prejudice for his default of this claim for the simple fact that his sufficiency of the evidence claim lacks any merit. It is clear that evidence is sufficient to support a conviction if, "after viewing the evidence in the light most

34

favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original; citation omitted). Alabama's murder statute provides that "[a] person commits the crime of murder if he . . . does any of the following: (1) With intent to cause the death of another person, he . . . causes the death of that person[.]" Ala. Code § 13A-6-2(a)(1). The evidence in this case was that Steele caused the death of William Aston by stabbing him with a Bowie knife with such force that he broke one of Aston's ribs before the knife penetrated Aston's left lung and heart and the victim bled out. As explained by the Alabama Court of Criminal Appeals on direct review, self-defense is a jury question, and when this proposition is combined with Alabama case law providing that intent can be inferred from the use of a deadly weapon and other attendant circumstances, *see, e.g., Benton v. State*, 536 So.2d 162, 164 (Ala.Crim.App. 1988) ("'Because the element of intent, being a state of mind or mental purpose, is usually incapable of direct proof, it may be inferred from the character of the assault, the use of a deadly weapon and other attendant circumstances.'" (citation omitted)), it is clear to the undersigned that any rational trier of fact could have found the essential elements of murder beyond a reasonable doubt. Therefore, Steele cannot establish that he was prejudiced by the procedural default of his sufficiency of the evidence claim because he cannot show that the result of his appeal would have been different had the claim been fully exhausted in Alabama's appellate courts.

Turning to Steele's claims of ineffective assistance of trial counsel, the undersigned is not totally comfortable in finding that Steele did not "fairly present" the ineffective assistance of trial counsel claims identified by respondent in his answer—

that is, counsel's failure to object to his wife's testimony on the ground of spousal privilege, counsel's failure to advise his wife that she could not be compelled to testify against him due to spousal privilege, and the failure to call the toxicologist as an expert witness (Doc. 7, at 8; *compare id. with* Doc. 1, at 7-8 & 17-19)—throughout one complete round of Alabama's appellate review process inasmuch as while it is apparent that these claims certainly went through some "modifications" and "tweaking" at the hands of Rule 32 counsel, some form of these three claims was raised throughout the appellate review process (*see* Doc. 7, Exhibits H, I, M & N) and supply the foundation for petitioner's consistent theme that his trial attorneys did not properly present his claim of self-defense (*see, e.g.,* Doc. 7, Exhibit N). Accordingly, the undersigned will perform a "merits" review of these three claims of ineffective assistance of trial counsel, all of which are separately set forth in Steele's habeas corpus petition. (*See* Doc. 1, at 7-8 & 17-19.)

However, the undersigned will not consider the merits of any claims of ineffective assistance of trial counsel beyond these three just identified that Steele means to "raise" under the umbrella of his all-encompassing general claim that he was denied effective assistance of counsel in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments. (*See* Doc. 1, at 6 & 14-17.) More specifically, the merits of the following additional claims of ineffective assistance of trial counsel that Steele raised at one time or another during the course of pursuing his Rule 32 rights in the state courts of Alabama will not be considered by the undersigned or, otherwise, will be considered only tangentially: (1) trial counsel erred in failing to submit jury instructions on voluntary intoxication and erred in failing to adequately challenge the trial court's charge based on the failure to include instructions on voluntary intoxication (*see* Doc. 1,

at 14-15); (2) trial counsel erred in failing to present mitigating evidence or call any witnesses on Steele's behalf at sentencing (*see id.* at 15); and (3) trial counsel erred in failing to request a stand your ground pretrial hearing and in otherwise failing to ensure that Steele received the benefit of the 2006 amendments to the use of force statute, Ala.Code § 13A-3-23, by, for example, making sure that the trial court's instructions to the jury covered the language in the amended version of § 13A-3-23(b) (*see id.* at 15 & 16). Initially, the undersigned is barred from reviewing these claims because Steele abandoned the mitigating evidence and voluntary intoxication instructions on direct review (Doc. 7, Exhibit L, at 5 n.2) and failed to raise his "self-defense statute" claims in his Rule 32 petition (*id.* at 7-9); therefore, this Court cannot find that Steele "fairly presented" these claims of ineffective assistance of trial counsel throughout one complete of Alabama's appellate review process and since the state court remedy is no longer available, his failure in this regard constitutes a procedural default. *Compare McNair v. Campbell,* 416 F.3d 1291, 1302 & 1305 (11th Cir. 2005) ("Habeas petitioners generally cannot raise claims in federal court if those claims were not first exhausted in state court. . . . In order to be exhausted, a federal claim must be fairly presented to the state courts. . . . [I]n order to ensure that state courts have the first opportunity to hear all claims, federal courts 'have required a state prisoner to present the state courts with the ***same*** claim he urges upon the federal courts.' . . . It is well established that when a petitioner has failed to exhaust his claim by failing to fairly present it to the state courts and the state court remedy is no longer available, the failure also constitutes a procedural bar. . . . In such a situation, the Supreme Court has held that the petitioner has failed to properly exhaust his state court remedies and therefore has procedurally defaulted his claims. *O'Sullivan v. Boerckel,* 526 U.S. 838, 848, 119 S.Ct.

1728, 1734, 144 L.Ed.2d 1 (1999).”), *cert. denied,* 547 U.S. 1073, 126 S.Ct. 1828, 164 L.Ed.2d 522 (2006), *with Kelley v. Secretary for the Dep’t of Corrections,* 377 F.3d 1317, 1344 & 1351 (11th Cir. 2004) (“[T]he prohibition against raising nonexhausted claims in federal court extends not only to broad legal theories of relief, but also to the specific assertions of fact that might support relief. For example, habeas petitioners may not present particular factual instances of ineffective assistance of counsel in their federal petitions that were not first presented to the state courts. . . . Dismissing a mixed petition is of little utility [] when the claims raised for the first time at the federal level can no longer be litigated on the merits in state court because they are procedurally barred. In such a case, requiring the petitioner to return to state court only to make a futile application for relief simply delays the federal courts’ adjudication of his petition.”), *cert. denied,* 545 U.S. 1149, 125 S.Ct. 2962, 162 L.Ed.2d 906 (2005). In addition, Steele’s “self-defense statute” and “mitigating evidence” ineffective assistance of counsel claims were not specifically and separately raised in his petition for writ of certiorari to the Alabama Supreme Court, *see O’Sullivan v. Boerckel,* 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) (“[I]n order to exhaust state remedies as to a federal constitutional issue a prisoner is required to file a petition for discretionary review in the state’s highest court raising that issue, if discretionary review is part of the appellate procedure in the state.”), and, therefore, are procedurally defaulted. Steele has utterly failed to establish cause and prejudice for his failure to “fairly present” the foregoing claims of ineffective assistance of trial counsel throughout one full round of Alabama’s appellate review process (*compare* Doc. 1 *with* Doc. 10); therefore, it is found that the cause and prejudice

exception to the procedural default doctrine is not applicable in this case.[18] *See Macklin v. Singletary*, 24 F.3d 1307, 1313 (11th Cir. 1994) (in abuse of the writ case, appellate court suggests that habeas courts need perform no analysis when the petitioner fails to argue an exception to application of the doctrine), *cert. denied*, 513 U.S. 1160, 115 S.Ct. 1122, 130 L.Ed.2d 1085 (1995); *Tower v. Phillips*, *supra*, 7 F.3d at 211 (court addressed only the single cause argument proffered by the petitioner).[19]

> **B.    Merits Review of Some Ineffective Assistance of Trial Counsel Claims Raised by Steele**.

---

[18]    The undersigned would parenthetically note, however, that Steele is categorically incorrect in arguing that his trial attorneys did not ensure that the trial court's oral charge to the jury contained language from the amended version of § 13A-3-23(b), *see id.* ("A person who is justified under subsection (a) in using physical force, including deadly physical force, and who is not engaged in an unlawful activity and is in any place where he . . . has the right to be has no duty to retreat and has the right to stand his . . . ground."), inasmuch as the trial court specifically gave this exact charge to the jury (*see* Doc. 7, Exhibit B, T.T. 151 ("THE COURT: . . . And I want to give you this additional charge on self-defense, ***and I ask that you listen carefully.*** A person who is justified in using physical force[,] including deadly physical force, and who is not engaged in an unlawful activity and is in any place where he . . . has the right to be, has no duty to retreat and has the right to stand his . . . ground." (emphasis supplied)).)

[19]    The fundamental miscarriage of justice/actual innocence exception does not apply in this case because petitioner has not satisfied the standard set forth in *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). That standard requires Steele to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* at 496, 106 S.Ct. at 2649-2650. To be credible, a claim of actual innocence "requires petitioner to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-- that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 865, 130 L.Ed.2d 808 (1995); *see also id.* at 327, 115 S.Ct. at 867 ("To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."). "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998) (citation omitted). Steele simply has not come forward with any new reliable evidence that establishes his actual factual innocence of the murder of William Aston for which he was convicted on May 16, 2012. Accordingly, this case is not one of those rare cases in which the actual innocence exception is applicable.

In accordance with the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petitioner is entitled to habeas corpus relief "on any claim adjudicated on the merits in state court if that adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Cox v. McNeil,* 638 F.3d 1356, 1360 (11th Cir.) (citing 28 U.S.C. § 2254(d)(1)), *cert. denied sub nom. Cox v. Tucker,* 132 S.Ct. 309, 181 L.Ed.2d 189 (2011); *see also Jones v. Secretary, Department of Corrections,* 644 F.3d 1206, 1209 (11th Cir.) ("[U]nder AEDPA, a federal court may not grant habeas relief on a claim that has been considered and rejected by a state court unless it is shown that the state court's decision was 'contrary to' federal law then clearly established in the holdings of the United States Supreme Court, 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000); or that it 'involved an unreasonable application' of such law, § 2254(d)(1); or that it was 'based on an unreasonable determination of the facts' in the light of the record before the court, § 2254(d)(2)."[20]), *cert. denied sub nom. Jones v. Tucker,* 132 S.Ct. 590, 181 L.Ed.2d 433 (2011).[21]

---

[20]     As amended, § 2254 now provides:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(Continued)

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by th[e Supreme] Court on a question of law or if the state court decides a case differently than th[e Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-413, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000); *see*

*Bottoson  v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000) ("In addition, a state court decision

involves an unreasonable application of Supreme Court precedent 'if the state court

either unreasonably extends a legal principle from [Supreme Court] precedent to a new

context where it should not apply or unreasonably refuses to extend that principle to a

new context where it should apply.'"), *cert. denied*, 534 U.S. 956, 122 S.Ct. 357, 151

L.Ed.2d 270 (2001).

"A state court decision is contrary to clearly established federal law if it applies a rule that contradicts the governing law set forth in Supreme Court cases or confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to the Court's." *Windom v. Sec'y, Dep't of Corr.*, 578 F.3d 1227, 1247 (11th Cir. 2009) . . . . A state court decision involves an unreasonable application of federal law when "it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case. An unreasonable application may also occur if a state court unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putnam v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001) . . . . The statutory phrase "clearly established Federal law" "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-

---

28 U.S.C. § 2254(d)(1) & (2).

[21]     The Act presumes as correct all determinations of factual issues made by a State court and places the burden upon the petitioner of rebutting such a presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e).

court decision." *Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

*Spencer v. Secretary, Dep't of Corrections,* 609 F.3d 1170, 1177-1178 (11th Cir. 2010), *cert. denied,* 562 U.S. 1203, 131 S.Ct. 1049, 178 L.Ed.2d 869 (2011).

1.   **Ineffective Assistance of Trial Counsel Claims.** With respect to the ineffective assistance of trial counsel claims identified above that are arguably not defaulted, the appropriate "inquiry turns upon whether the state decision was contrary to or an unreasonable application of *Strickland*." *See, e.g., Means v. Secretary, Dep't of Corrections,* 433 Fed.Appx. 852, 855 (11th Cir. Jul. 12, 2011) (citing *Woodford v. Visciotti,* 537 U.S. 19, 22, 24-25, 123 S.Ct. 357, 358-360, 154 L.Ed.2d 279 (2002)), *cert. denied,* 132 S.Ct. 1580, 182 L.Ed.2d 198 (2012).[22]

> First, under § 2254(d)(1)'s "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of facts materially indistinguishable facts."
>
> Next, under the "unreasonable application" clause, a federal habeas court may "grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts" of the case. "In other words, a federal court may grant relief when a state court has misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced.'" Importantly, for a federal habeas court to find a state court's application of Supreme Court precedent "unreasonable," it is not enough that the state court's adjudication be "incorrect or erroneous"; that application must have been "objectively unreasonable."

*Frazier v. Bouchard,* 661 F.3d 519, 530-531 (11th Cir. 2011) (internal citations and brackets omitted), *cert. denied sub nom. Frazier v. Thomas,* 133 S.Ct. 410, 184 L.Ed.2d 58 (2012); *see*

---

[22]   In other words, "[i]t is beyond question that, in addressing the relevant claim, we are dealing with an area of 'clearly established Federal law [under *Strickland*].'" *Frazier, supra,* 661 F.3d at 527 n.12 (citation omitted).

*also Pair v. Cummins,* 373 Fed.Appx. 979, 981 (11th Cir. Apr. 20, 2010) ("Under the 'unreasonable application' prong of § 2254(d)(1), the habeas petitioner bears the burden 'to show that the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner.' 'The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether, that determination was unreasonable—a substantially higher threshold.'" (internal citations omitted)). The foregoing makes clear that "'[i]n addition to the deference to counsel's performance mandated by *Strickland,* the AEDPA adds another layer of deference—this one to a state court's decision—when we are considering whether to grant federal habeas relief from a state court's decision.'" *Means, supra,* 433 Fed.Appx. at 855 (citation omitted).

To prevail on an ineffective assistance of counsel claim, a petitioner/defendant is required to show (1) that his attorney's representation fell below "an objective standard of reasonableness" and (2) that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *see also Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001) ("The petitioner bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a *Strickland* claim, and both prongs must be proved to prevail."), *cert. denied sub nom. Johnson v. Nagle*, 535 U.S. 926, 122 S.Ct. 1295, 152 L.Ed.2d 208 (2002).[23]

---

[23]     Given the two-prong nature of the test for adjudicating ineffective-assistance-of-counsel claims, it can come as no surprise that "'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.'" *Johnson, supra,* 256 F.3d at 1176 (citation omitted). When applying the *Strickland* standard, it is clear that courts "are free to dispose of ineffectiveness claims on either of its two grounds." *Oats v. Singletary*, 141 F.3d 1018, 1023 (11th Cir. 1998) (citation omitted), *cert. denied sub nom. Oats v.* (Continued)

> The performance prong of the ineffective assistance standard entails a deferential review of counsel's conduct. In assessing the reasonableness of counsel's performance, courts must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Thus, the Sixth Amendment does not require criminal defense attorneys to take a nothing to lose approach and raise every conceivable nonfrivolous defense.

> With respect to prejudice, courts ask whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. In the context of a claim that counsel was ineffective on appeal, the court must first perform a review of the merits of the omitted or poorly presented claim. The defendant carries his burden of establishing prejudice if the court finds that the neglected claim would have had a reasonable probability of success on appeal.

*Means, supra,* 433 Fed.Appx. at 855-856 (internal quotation marks and citations omitted); *see also Pair, supra,* 373 Fed.Appx. at 981-982 & 982 ("The performance prong of an ineffective assistance claim requires the petitioner to show that, considering all the circumstances, his attorney's representation fell below an objective standard of reasonableness. The standard is that of a reasonable attorney, not a paragon of the bar or an Aristotle or a Clarence Darrow. Moreover, judicial review of an attorney's performance is highly deferential, and the court must eliminate the distorting effects of hindsight and evaluate performance from the attorney's perspective at the time the challenged conduct occurred. In so doing, the court must indulge a strong presumption that the attorney's conduct was objectively reasonable. A petitioner fails to overcome

---

*Moore,* 527 U.S. 1008, 119 S.Ct. 2347, 144 L.Ed.2d 243 (1999); *see also Adamson v. United States,* 288 Fed.Appx. 591, 594 (11th Cir. Jul. 29, 2008) ("The defendant must satisfy both prongs of this test to show a Sixth Amendment violation; if the defendant fails to demonstrate one of these prongs sufficiently, we do not need to address the other."), *cert. denied,* 555 U.S. 1010, 129 S.Ct. 526, 172 L.Ed.2d 385 (2008); *Butcher v. United States,* 368 F.3d 1290, 1293 (11th Cir. 2004) ("[O]nce a court decides that one of the requisite showings has not been made it need not decide whether the other one has been.").

that presumption if the challenged conduct might be considered sound trial strategy. . . . Pair must [also] establish prejudice. It is not enough for him to show that his counsel's deficient performance had some conceivable effect on the jury's verdict. Instead, Pair must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (internal quotation marks and citations omitted)).

As explained in more detail below, all of Steele's arguably non-defaulted claims of ineffective assistance of trial counsel fail. Before looking at each individual claim, the undersigned would simply note that this is not a § 2254(d)(2) case because petitioner nowhere (*see* Docs. 1 & 10) shows by clear and convincing evidence that any of the state courts' factual findings were unreasonable. *See, e.g., Duran v. Walker,* 223 Fed.Appx. 865, 871 (11th Cir. Mar. 29, 2007) ("[A] state court's factual findings are presumed correct, and the petitioner can rebut them only by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). As such, for a state court's adjudication to result in an unreasonable determination of the facts in light of the evidence presented, '[n]ot only must the factual determination have been unreasonable, but the state court's factual findings must be shown unreasonable by clear and convincing evidence.' *Callahan v. Campbell,* 427 F.3d 897, 926 (11th Cir. 2005), *cert. denied,* 549 U.S. 952, 127 S.Ct. 427, 166 L.Ed.2d 269 (2006)."), *cert. denied,* 552 U.S. 874, 128 S.Ct. 179, 169 L.Ed.2d 122 (2007). Accordingly, the undersigned considers solely whether the merits decisions of the Choctaw County Circuit Court and the Alabama Court of Criminal Appeals are contrary to, or an unreasonable application of, *Strickland v. Washington* under § 2254(d)(1).

     **a.**     **Trial Counsel's Failure to Advise Steele's Wife of her Right not to**

**Testify on the Basis of the Spousal Privilege and Counsel's Failure to Object to the Testimony of his Wife on the Ground of Spousal Privilege**.  For convenience sake, the undersigned considers these two "separate" claims of ineffective assistance of trial counsel together because of their inherent "connectedness." (*See* Doc. 7, Exhibit L, at 11 ("Steele argues that his trial counsel was ineffective for failing to advise Steele's wife, Leddon, that she could not be compelled to testify against Steele under Rule 504, Ala.R.Evid., and for failing to object to her testimony on that basis.").) Petitioner contends that the record does not reflect that his wife, Mary Leddon, was informed by his defense counsel of her right not to testify because of spousal privilege and that had she been so informed, she would not have testified. In addition, Steele attacks his counsel's failure to object to the testimony of his wife on the basis of spousal privilege when she appeared at trial based upon the State's subpoena.

As reflected above, the trial court found that trial counsel was not deficient in either regard. First, with respect to the failure to object, the trial court determined that there were no actions between the spouses intended as communications and no communications between the spouses and, therefore, no objection was warranted. (Doc. 7, Exhibit H, March 5, 2015 ORDER, at 2.) In addition, the trial court noted that the privilege did not apply in any case because any communication that may have occurred was not confidential because of the presence of the decedent and, therefore, counsel was not deficient in failing to interpose an objection. (*Id.*) The Alabama Court of Criminal Appeals agreed with the trial court's ruling in this regard. (Doc. 7, Exhibit L, at 11 ("Those actions [of Steele about which Leddon testified], even if they were to be considered communications, were not confidential as they were made in the presence of the victim.").) Second, regarding the lack of advice to Leddon that she could not be

compelled to testify, the trial court determined that trial counsel did not have a duty to advise Leddon of the spousal privilege and, further, that counsel made a strategic decision to allow Leddon to testify to the events necessary to establish self-defense. (Doc. 7, Exhibit H, March 5, 2015 ORDER, at 2.) The Alabama Court of Criminal Appeals also agreed with the trial court's decision in this regard. (Doc. 7, Exhibit L, at 11 ("Steele's trial counsel did not have a duty to advise Leddon of the husband-wife privilege. . . . [T]he record shows that trial counsel's decision to allow Leddon to testify was trial strategy. At the hearing, Leddon testified that trial counsel had communicated to Leddon that it would be in Steele's best interests if she offered evidence in support of Steele's self-defense claim. 'The selection of witnesses and the introduction of evidence are questions of trial strategy and virtually unchallengeable.'").)

Petitioner offers this Court no citation to case law which would establish that the Choctaw County Circuit Court and Alabama Court of Criminal Appeals were incorrect in determining that the spousal privilege was inapplicable in this case since all relevant actions of Steele (and any communications between Steele and Leddon[24]) occurred within the presence of the decedent. Without clear law establishing application of the spousal privilege to actions/communications occurring within the presence of a third party, trial counsel obviously would not be deficient in failing to advise Leddon of an inapplicable/non-existent privilege (even if such a duty to so advise existed, which Steele has not established by citation to appropriate case law) or in failing to object to Leddon's testimony on this basis. And because petitioner has not established the

---

[24]   The only "communication" to which Leddon testified was her telling Steele that Aston did not wake him from his nap, that it was her belief that their youngest son had awakened Steele.

applicability of the spousal privilege, the Alabama courts' determinations that trial counsel was not deficient in these regards are not contrary to or an unreasonable application of *Strickland v. Washington*.

As well, the explicit determinations by the Alabama courts that trial counsel made a strategic decision to allow/encourage Leddon to testify is not contrary to, or an unreasonable application of, *Strickland v. Washington*. The record supports these determinations. Steele maintained at trial, and continues to maintain to this day, that he stabbed William Aston in self-defense. In order to inject the issue of self-defense, and necessitate instructions to the jury on this defense, evidence—namely, testimony—had to be offered in the defendant's favor tending to establish self-defense. *Compare Diggs v. State*, 168 So.3d 156, 162 (Ala.Crim.App. 2014) ("Because Diggs presented evidence [specifically, testimony,] in support of his self-defense claim, the trial court erred when it refused to give the requested instructions to the jury.") *with Lemley v. State*, 599 So.2d 64, 72-73 (Ala.Crim.App. 1992) ("The appellant was entitled to a charge on self-defense ***because he presented evidence*** that he believed one of the group of individuals outside his house was aiming a gun at him and was 'about to use unlawful deadly physical force' against him. He was not required to retreat from the perceived attack because one assaulted in his own dwelling is not bound to retreat before defending himself." (citation omitted; emphasis added)). That is, there had to be evidence/testimony establishing Aston as the aggressor and/or evidence/testimony that Steele was justified in using physical force, including deadly physical force, to defend himself from what he reasonably believed to be the imminent use of unlawful physical force by Aston. *See Diggs, supra,* 168 So.3d at 161 ("[T]he court ***should not*** instruct on the law of self-defense where there is no evidence to sustain the plea. In the absence of any evidence having a

tendency to show that at the time of the killing the accused was in imminent peril of life, or grievous bodily harm, or of the existence of circumstances creating in his mind a reasonable belief of such peril, these instructions are abstract. A trial judge may properly refused to charge the jury on self-defense where he determines that the defendant could not set up self-defense under the facts." (internal citations, quotation marks, brackets and ellipses omitted; emphasis supplied).) Clearly, therefore, Steele or his wife, Leddon, had to testify because without such testimony—that is, without one of them testifying about the events of March 18, 2011—the record would be bereft of any evidence whatsoever that Aston continued an argument that Steele wanted to end and acted in an angry, threatening or aggressive manner by advancing on Steele in Steele's house, thereby causing Steele to stab Aston to defend against what he believed to be the imminent use of unlawful physical force by Aston. In other words, without Leddon's testimony (or the testimony of Steele himself[25]), there is no evidence that Aston was either unwelcomed or that he entered Steele's house uninvited as argued in the petition for writ of certiorari submitted to the Alabama Supreme Court (Doc. 7, Exhibit N, at 9 & 10); instead, the entirety of the evidence would be that Aston's death was homicide and that the cause of death was a stab wound to the chest delivered by Steele with such force that a rib was broken before the knife hit the victim's left lung and heart.[26]

---

[25]      As noted by the trial court, and not challenged by petitioner, the defense team did not want to subject Steele to cross-examination. (Doc. 7, Exhibit H, March 5, 2015 ORDER, at 2; *compare id. with* Doc. 7, Exhibit B, T.T. 129-130 (following numerous meetings between Steele and defense counsel, Steele concurred in the decision that he should not take the stand in his defense, voluntarily chose not to testify, and informed the trial court at the close of all the evidence that it was his decision not to testify).)

[26]      Moreover, the victim was lying outside Steele's house when Sgt. Breland arrived and though the murder weapon was confiscated, the victim (who had ethanol and other drugs in his system) was not holding or in possession of a weapon.

Accordingly, the Choctaw County Circuit Court and the Alabama Court of Criminal Appeals were correct in finding that defense counsel made a strategic decision to not "object" to the State subpoenaing Leddon to testify in order to obtain her testimony regarding the events of March 18, 2011 and allow Steele to make a claim of self-defense. Indeed, Leddon admitted during the Rule 32 hearing that defense counsel informed her that it would be in Steele's best interests if she offered evidence in support of his self-defense claim and, as established above, her testimony was the lynchpin for this claim. Steele's attorneys were in no manner deficient with respect to their use of Leddon during the course of Steele's trial.

### b.   Trial Counsel's Failure to Call the Toxicologist as an Expert

**Witness**.   In his habeas corpus petition, Steele simply argues in a very general manner that defense counsel erred in failing to call as an expert witness at his trial the toxicologist, Kelly Wood, who analyzed the samples (blood, urine, and vitreous fluid) taken from the victim's body. (*See* Doc. 1, at 8 & 19.) In analyzing the issue as presented to the Alabama Supreme Court in Steele's petition for writ of certiorari to the Alabama Supreme Court, it is clear that petitioner means to argue that because Wood did not testify he was prevented from offering evidence of the decedent's drug and alcohol use—that is, the different levels of these substances in the victim's system—and Wood's conclusions about those substances, which testimony would not have been detrimental to his theory of self-defense. (*See* Doc. 7, Exhibit N, at 5-11.)[27]

---

[27]    Petitioner goes on to argue that, without Wood's testimony, he was prevented from requesting jury instructions directed to utilization of the victim's intoxication. (*See* Doc. 7, Exhibit N, at 9-11.) Steele specifically contends in the petition for writ of certiorari that because the jury never heard the degree of Aston's intoxication (and that drugs were in his system) "proper jury instructions about how to utilize the intoxication of the victim was never given and the jury failed to understand how to use the fact the victim was drunk and trespassing into the (Continued)

Initially, the undersigned finds significant, as just noted, that petitioner is incorrect in positing that the jury did not hear about the levels of ethanol and other drugs in the victim's system inasmuch as, again, Dr. Hart testified about the various levels of ethanol and other drugs found in Aston's bodily fluids. Moreover, the undersigned agrees with the Circuit Court of Choctaw County that Wood's other putative trial testimony (based upon her Rule 32 testimony)—that with the level of alcohol in Aston's system she could not definitively say that the victim would have been more aggressive or more sedate—"would not tend to make the fact that the decedent had been more aggressive more likely[,]" and, therefore, trial counsel was not

---

home of John Steele adequately." (Doc. 7, Exhibit N, at 10.) Steele also argues that had such instructions been given, they would have resembled those in *Quinlivan v. State*, 555 So.2d 802, 804-805 & 805 (Ala.Crim.App. 1989) ("I charge you, members of the jury, that if you believe from the evidence that at the time of the killing the deceased was under the influence of alcohol, you may consider such fact in determining whether or not the defendant acted in self-defense. . . . I charge you, members of the jury, that if you believe from the evidence that the deceased at the time of his death was under the influence of alcohol, and that as a result of being under such influence, the deceased was aggressive, or belligerent, or quarrelsome, then you should consider such facts in determining whether or not the defendant acted in self-defense in killing the deceased, as I have explained the law governing self-defense to you." (quotation marks omitted)), and since "it is probable that the instructions [w]ould have weighed against the State's burden of disproving self-defense[,]" (Doc. 7, Exhibit N, at 10), prejudice accrued to petitioner because these instructions were not requested or given (*see id.* at 10-11).

Steele's "victim intoxication jury instructions" argument, however, suffers from two fatal infirmities. First, the jury most certainly learned of the levels of ethanol and other drugs in Aston's blood, urine and vitreous fluid through the testimony of the forensic pathologist, Dr. Hart. (*See* Doc. 7, Exhibit B, T.T. 99-102.) More importantly, the instructions cited above from the *Quinlivan* case, which Steele contends were neither requested nor given, were, in fact, part and parcel of the trial court's oral instructions to the jury. (*See id.,* at 144-145 ("I charge you members of the jury that if you believe from the evidence that at the time of the killing[] the deceased was under the influence of alcohol, you may consider such fact in determining whether or not the defendant acted in self-defense. I charge you members of the jury that if you believe from the evidence that the deceased, at the time of his death, was under the influence of alcohol, and that, as a result of being under such influence, the deceased was aggressive, or belligerent, or quarrelsome, then you should consider such facts in determining whether or not the defendant acted in self-defense in killing the deceased, as I have explained the law governing self-defense to you.").) Therefore, trial counsel was obviously not deficient in this regard because counsel acted in the exact manner that petitioner argues they should have acted.

deficient in failing to call Wood as a witness. (Doc. 7, Exhibit H, March 5, 2015 ORDER, at 3.)[28] In other words, the trial court's finding in this regard is not contrary to, or an unreasonable application of, *Strickland v. Washington*.

Finally, to the extent Steele would seem to suggest in his petition for writ of certiorari to the Alabama Supreme Court that he was prejudiced by trial counsel's failure to call Wood as a witness, because her testimony would not have been inconsistent with the theory of self-defense, the undersigned rejects this suggestion because he further premises his prejudice argument on counsel's error in utilizing Leddon's testimony. (*See* Doc. 7, Exhibit N, at 6-9.) While the undersigned does not disagree with petitioner that nothing about Wood's testimony would be detrimental to a claim of self-defense, it is also clear that absolutely nothing about that testimony sets forth the facts necessary for entitlement to claim self-defense or have the jury instructed on the law of self-defense. In other words, based on Steele's "ideal" scenario—having the benefit of Wood's testimony but not presenting Leddon's testimony—this Court would have no basis to find that the result of petitioner's trial would have been different for the simple fact that Steele would not have supplied the trial court with the necessary facts to allow a claim self-defense and charge the jury on that defense theory.[29] Accordingly, this claim of ineffective assistance of trial counsel lacks merit.

---

[28]     Also relevant to a finding of no deficient performance by trial counsel in failing to call Wood as a witness during the trial is the fact that Steele specifically informed the trial court that he concurred in the decision not to call Wood as a witness in his case. (*See* Doc. 7, Exhibit B, T.T. 129-130.)

[29]     As set forth at more length *supra*, Wood could not place the admittedly drunk Aston in Steele's house refusing to "end" a verbal argument and advancing on Steele in an angry, aggressive, belligerent or quarrelsome manner; only Leddon, or Steele himself, could supply such facts necessary for his claim of self-defense.

      **C.**    <u>**Certificate of Appealability.**</u>   Pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, the undersigned recommends that a certificate of appealability in this case be denied. 28 U.S.C. foll. § 2254, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2).  The instant habeas petition is being denied partly on procedural grounds without reaching the merits of certain constitutional claims, such that "a COA should issue [only] when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling[,]" *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000), but also partially on the merits of underlying constitutional claims, such that a COA should issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[,]" *Slack v. McDaniel, supra,*; *see also id.* at 483–484, 120 S.Ct. at 1603-1604 ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot*, includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"); *see Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S.Ct.

1029, 1039, 154 L.Ed.2d 931 (2003) ("Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'"). With respect to certain identified ineffective assistance of trial counsel claims discussed above (that is, the claims related to the trial testimony of Leddon and the failure to obtain the trial testimony of Wood), the undersigned recommends that the Court find that reasonable jurists could not debate whether his § 2254 habeas petition should be resolved in a different manner or that any of the remaining issues presented are adequate to deserve encouragement to proceed further. With respect to his sufficiency of the evidence claim and other claims of ineffective assistance of trial counsel identified above, petitioner has defaulted these claims without fairly presenting (and exhausting) them to the state courts and those same courts would now find the claims procedurally barred, *compare McNair, supra,* 416 F.3d at 1302 & 1305 *with Kelley, supra,* 377 F.3d at 1344 & 1351; thus, a reasonable jurist could not conclude either that this Court is in error in dismissing the instant petition or that Steele should be allowed to proceed further, *Slack, supra,* 529 U.S. at 484, 120 S.Ct. at 1604 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."). Accordingly, petitioner is not entitled to a certificate of appealability as to any of the claims he has raised in his habeas corpus petition.

Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to

the attention of the district judge in the objections permitted to this report and recommendation. *Brightwell v. Patterson,* CA 11-0165-WS-C, Doc. 14 (Eleventh Circuit order denying petitioner's motions for a COA and to appeal IFP in a case in which this Court set out the foregoing procedure); *see also Castrejon v. United States,* 2011 WL 3241817, *20 (S.D. Ala. June 28, 2011) (providing for the same procedure), *report and recommendation adopted,* 2011 WL 3241580 (S.D. Ala. July 29, 2011); *Griffin v. DeRosa,* 2010 WL 3943702, at *4 (N.D. Fla. Sept. 20, 2010) (providing for same procedure), *report and recommendation adopted sub nom. Griffin v. Butterworth,* 2010 WL 3943699 (N.D.Fla. Oct. 5, 2010).

**CONCLUSION**

The Magistrate Judge is of the opinion that petitioner's rights were not violated in this cause and that his request for federal habeas corpus relief, pursuant to 28 U.S.C. § 2254 (Doc. 1), should be **DENIED**. Petitioner is not entitled to a certificate of appealability and, therefore, he is not entitled to appeal *in forma pauperis.*

**NOTICE OF RIGHT TO FILE OBJECTIONS**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. Ala. GenLR 72(c)(1) & (2). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time

period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 19th day of October, 2016.

 s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**